## Gatliff's Adm'r. *vs* Rose *et al.*

### ERROR TO THE ESTILL CIRCUIT.

*Slaves. Prescriptive rights. Executory contracts. Emancipation. Indians.*

JUDGE BRECK delivered the opinion of the Court.

TRESPASS.

*Case* 156.

*September* 29.

In 1833, Rose and her children and grand children, in all now numbering thirteen, instituted actions of trespass against Charles Gatliff, &c., claiming them as slaves, for the purpose of trying their right to freedom. The suits were commenced in the county of Whitley, and the venue afterwards changed to the county of Pulaski, where they were submitted to two juries, but neither was able to agree upon a verdict. They were afterwards moved to the county of Knox, and then to the county of Estill, where, in 1846, verdicts and judgments were rendered for the plaintiffs, to reverse which Gatliff's administrator prosecutes this writ of error.

Case stated and judgment of the Circuit Court.

It is contended that the Court below erred in expounding the law to the jury, and to the prejudice of the defendant, now plaintiff.

The grounds on which the judgment is assailed.

2d. That the Court erred in overruling the motion for a new trial, upon the ground that the verdict was unsupported by either the law or the facts of the case.

GATLIFF'S AD'R.
vs
Rose et al.

There was before the jury a mass of testimony, the greater portion of which was presented in the way of depositions.

Grounds assumed by the plaintiff in error.

On one side, the testimony conduced to prove that the mother of Rose was a mulatto woman, and a slave, by the name of Jin, and as early as 1780, was owned by one James Lauderdale, in Bottetourt county, Virginia; that about 1784, Lauderdale sold Rose as a slave, then being from five to seven years of age, to one Gill, who shortly afterwards brought her to Garrard county, Kentucky; that Gill very soon afterwards sold her to one Jones, and he to one Gwinn, who sold her to one McNitt, who, in 1799, sold her and her oldest child, to Gatliff, by whom and his representatives, she had ever since been held as a slave.

Grounds assumed by the defendants in error.

On the other side, the testimony conduced to prove, that the mother of Rose was an Indian woman by the name of Jin, and that she was free. There was also testimony conducing to prove, that Lauderdale was the father of Rose, and on that account parted with her to Gill; and that she was to be free at the age of eighteen or twenty-one.

But there is great contrariety in the testimony, and it tends on the one side and the other, to establish material facts, repugnant to each other, and utterly irreconcilable.

There is, however, no confliction in the testimony in regard to the color of Rose. Witnesses on all sides speak of her when young, as being very white—*as white as most white children through the country*—and there is proof that she was sometimes mistaken while in the family of Lauderdale, for one of his children.

It very conclusively appears also, from the testimony, that she has more or less Indian blood in her. And in determining that question, so far as material, the jury were aided by a personal inspection of the plaintiffs, who, or a part of them, appear to have been present for that purpose upon the trial.

But without adverting more particularly to the testimony, we will proceed to examine the alledged errors

of the Court, in giving and withholding instructions from the jury.

The defendant moved eighteen instructions, fifteen of which were given, most of them in reference to the rules of law applicable to the consideration and weight of the evidence. The 4th, 13th and 14th were refused. The 4th is not in the record. The other two, we think, were properly refused.

The conclusion attempted to be deduced from the assumed facts in the 13th instruction, is not, we think, the law as applicable to freedom and slavery. Although Lauderdale may have had a bill of sale for Jin and Rose, and they both may have been held in slavery since the date of it in 1780, still those facts afford no legal presumption that Jin was a slave. If so, Rose upon the same principle should be presumed a slave. But this question was, in effect, settled by this Court, in *Gentry* vs *McMinnis*, (3 *Dana*, 382.) In that case, the Court say the Circuit Judge did not err in refusing to instruct the jury that they should presume the defendant was a slave, from the fact that she had been held as such for more than thirty years.

The Court further say, that prescription alone cannot be proof of slavery, and if it be entitled to any influence, it can only be that of a slight circumstance, corroborative, or rather, illustrative in a remote degree, of a more decisive fact, such as color or reputation as to maternity. The Court of Appeals in Virginia, in *Hudgins* vs *Wright*, (1 *Hen. and Mun.*, 141,) in even stronger terms, intimate that prescription is no evidence at all of slavery. In regard to the bill of sale, it was before the jury without objection or question as to its genuineness, and it was the province of the jury to give it such weight as they might think it entitled to.

The 14th instruction presents a question as to the competency or admissibility of testimony to prove the pedigree of Rose. It is not a motion to exclude or to instruct the jury to disregard any portion of the evidence before them. In support of such a motion, the rule of law stated in the instruction might perhaps be applicable, but as a person of either Indian or African

*[margin notes:]*

GATLIFF'S AD'R. *vs* ROSE *et al.*

Defendant's instructions which were refused, were properly refused.

The fact that one has been held as a slave for a great length of time, affords no presumption of slavery: *Gentry* vs *McMannis*, (3 *Dana*, 382; 1 *Hen. and Mun.* 141.)

descent could not prove pedigree by relatives, we are inclined to the opinion it would not be. At any rate, the instruction, as asked, was properly refused.

What instructions were moved by the plaintiffs, does not appear, but it seems in lieu of those moved, the Court instructed the jury:

1. That if *Jin* was an Indian, full blood or had no African blood in her, and the plaintiffs were her descendants, they were free. This instruction we think was correct.

The rule is well settled by the decisions of this Court, and also by the Supreme or Appellate Court of Virginia, that one apparently a white person or an Indian, is *prima facie*, free: *Gentry* vs *McMinnis*, and also *Hudgins* vs *Wright*, *supra*. Indians were never allowed to be made slaves in Virginia, except from 1679 to 1691, and then only under particular circumstances, as appears from the cases cited. To prove an Indian a slave, therefore, it must be shown that his or her maternal ancestors were slaves within that period; and there is no such proof in this case in regard to Jin.

2. The Court instructed the jury, "That if they found Jin was a slave, yet if they believed from the evidence that Lauderdale was the father of the plaintiff, Rose, and transferred said Rose to Gill, with an intention to set her free at any age, or absolutely free her, and Rose had attained said age, notwithstanding the transaction was spoken of as a sale between the parties, if they designed to cover up their real purpose in the form of a sale to quiet the discord between Lauderdale and his wife by such mode, yet Rose was entitled to the benefit of any such agreement made between them for her liberation."

This instruction is misleading and clearly erroneous. The principal, if not the only evidence upon which any instruction of the kind could be based, was by a subsequent instruction in effect excluded from the jury. There was some proof of the declarations of Lauderdale, that when he sold Rose to Gill, there was an arrangement between them that she was to be free at a certain age; but these declarations were made years

after the sale or transfer, and such declarations the Court very properly told the jury, were not admissible and were to be disregarded by them. It is true there is proof that Jones, Gwinn and McNitt, while Rose was held by them, spoke of her as a bound or indented Indian girl, to be free at the age of eighteen or twenty one; and that they had purchased her time on indentures. But when, how, or by whom she had been bound, the testimony does not show.

But even if there was testimony conducing to establish the assumed facts, the instruction could not be sustained. The mere intention or design of the parties, that Rose was to be free at a given age, would not effect her liberation, nor could she render it available; nor could she obtain any benefit, as the instruction implies she could, from any agreement, parol or written, between Lauderdale and Gill, that the latter was to emancipate her at a certain age. Lauderdale might enforce such an agreement, but as has been decided by this Court in *Dunlap, &c.* vs *Archer,* (7 *Dana,* 30;) and *Willis* vs *Bruce, &c.,* (8 *B. Monroe,* 548,) Rose could not. It is true Lauderdale might have executed such an instrument as would have emancipated her prospectively, and still have transferred her custody and services to Gill, for a given period, and of such an instrument she would be entitled to the benefit. But the instruction goes much further, and is, in no view of the case, sustainable.

If the record presented such a case as to leave no doubt in our minds as to the correctness of the verdict, or it was apparent that the jury could not have been misled by this instruction, we should not, on that account, have been inclined to disturb the judgment. But such is not the case. In the mass of conflicting testimony there is difficulty in coming to a satisfactory conclusion. What effect a personal inspection of the plaintiffs might have in reference to their claim to freedom, we of course, cannot determine from the record before us.

To the other instructions we perceive no valid objection. But for the error in the foregoing instruction, the

---

*Margin notes:*

GATLIFF'S AD'R.
*vs*
ROSE *et al.*

A slave cannot enforce an executory agreement made between free white persons for emancipation, they are enforcible by the parties only: *Willis* vs *Bruce, (ante,* 548; 7 *Dana,* 30.)

INSURANCE COM-
PANY
*vs*
SOUTHARD.

judgments must be reversed and the causes remanded, that a new trial may be granted and further proceedings had consistent with this opinion, and the plaintiff in error will be entitled to no costs in this Court.

*F. Ballinger* for plaintiff; *B. & A. Monroe, Turner and Caperton* for defendants.