*Morris*, for plaintiffs; *Haggin* and *Harris*, for defendant.

---

E. O. Hawkins *vs.* P. F. Hawkins,
    Same     *vs.* Jackson Hawkins,
    Same     *vs.* Jas. F. Hawkins,
    Same     *vs.* Harriet C. Hawkins,
    Same     *vs.* Geo. W. Hawkins,

} Persons of color.

CHANCERY.

ERROR TO LOGAN CIRCUIT.

Case 24.

Judge MARSHALL delivered the opinion of the court. September 23.

1. The following clause in a will held not to be mandatory, but only advisory, and conferred only a power, viz: "It is my will and "desire that my wife Lucy should have my negroes during her "life or widowhood, with full power to emancipate them all be-"fore or at her death, as they, said negroes, arrive at the age of "thirty-one years. It is my wish and desire that my wife Lucy "should emancipate said negroes as above directed."

2. Testator by his will gave his slaves to his wife during life, with power to emancipate them at the age of thirty-one each, at or before her death. The widow sold one of the slaves until she should arrive at thirty-one years of age, and took the covenant of the purchaser to emancipate the slave and her increase as they respectively should arrive at the age of thirty-one—held, that this contract was executory and could only be enforced by the widow or her representatives and not by the slaves, (8 *B. Monroe*, 633; *Ib.* 348; 7 *Dana*, 31; 11 *B. Monroe*, 243–4,) and did not amount to an emancipation of the slaves.

3. If a power given to one by will to emancipate slaves can be transferred to another (of which, quere?) it would devolve upon the personal representative of the person to whom given, not the heir, and should be by a writing as recognized by statute. (See *Major* v. *Winans, post.*)

This record presents six separate bills, filed by Pauline F., Jackson, James F., Harriet C., George W., and Eada Hawkins, persons of color, held in

Case stated.

E. O. HAWKINS
*vs.*
P. F. HAWKINS,
&c.

slavery, but claiming their freedom under the will of James Hawkins, which was admitted to record in 1803. The six cases were heard together in the circuit court, where the bill of Eada was dismissed, and the other complainants were decreed to be free. The decree against Eada was affirmed by this court, (*Manuscript Opinion, Jan.* 1852;) and the decrees in favor of the other complainants are brought up by Edmond O. Hawkins, the defendant in each of the bills.

1. The following clause in a will held not to be mandatory, but only advisory, and conferred only a power, viz: "It is my "will and de-"sire that my "wife Lucy "should have "my negroes "during her life "or widow-"hood, with "full power to "emancipate "them all be-"fore or at her "death, as they, "said negroes, "arrive at the "age of thirty-"one years.— "It is my wish "and desire "that my wife "Lucy should "emancipate "said negroes "as above di-"rected."

The will of James Hawkins contains the following clauses, under which the complainants claim, viz: "It is my will and desire that my wife Lucy should have all my negroes during her life or widowhood, with full power to emancipate them all before or at her death, as they said negroes arrive at the age of thirty-one years. It is my wish and desire that my wife Lucy should emancipate said negroes as above directed."

In the case of Eada, whose claim rested solely upon these clauses of the will, the court decided that the will was not mandatory with respect to the emancipation of the slaves, but was precatory or advisory, and gave only a power to emancipate which rested in the discretion of Mrs. Lucy Hawkins. And as she had done no act in execution of the power in behalf of Eada or her mother, Maria, there was in that case no emancipation. In the cases now before us the complainants claim not only under the direct operation of the will, which, according to the decision in Eada's case, is insufficient to emancipate them, but, also, upon the alleged facts that Lucy Hawkins, after the death of her husband the testator, sold their mother Clary, who had belonged to him at his death, to one William Lee until she should arrive at the age of thirty-one years, (she being then twelve years old,) and took from him a bond in the penalty of $2,000, conditioned to liberate and set free Clary and her children, should she have issue, as each attains the age of thirty-one years, and stipulating for various other acts in aid of that object; that in the year 1826,

when Clary was about thirty-one years of age, the heirs of William Lee, in pursuance and in discharge of said bond, went into the county court of Logan, and emancipated her as appears by the record of said court; and that from that time Clary and the complainants, her children, all of whom except Jackson, were born since said act of emancipation, have gone about and been recognized as free persons, until since the death of Mrs. Lucy Hawkins, whose executor, Edmond O. Hawkins, claims to hold them as slaves.

The defendant, E. O. Hawkins, does not deny the facts thus alleged, but denies their effect as claimed by the complainants; and relies upon the ground that Lucy Hawkins performed no act by which the complainants, or their mother Clary, were or could be emancipated; that she never executed nor attempted to execute her power of emancipation; that it was not transferable and could not have been exercised by William Lee, and much less by his heirs after his death; that the attempted emancipation in the county court of Logan was without authority and wholly invalid; that Clary and her children were not disturbed during the life of Lucy Hawkins, because she had a life estate in them and had sold her interest; that they were not emancipated by her mere wish or intention that they should be, and that they were still slaves. And whatever may be the effect of the facts with regard to the other children of Clary, he claims that Jackson, having been born while his mother was certainly a slave, has no plausible claim to freedom.

As Jackson was not embraced in the attempted emancipation in the county court of Logan, the decree as to him can only be sustained upon the ground that the transaction between Lucy Hawkins and William Lee was a virtual execution of the power as to Clary and her children, and operated as a prospective emancipation of each as they should respectively attain the age of thirty-one years. And the circuit

E. O. HAWKINS
vs.
P. F. HAWKINS,
&c.

she should arrive at thirty-one years of age, and took the covenant of the purchaser to emancipate the slave and her increase, as they respectively should arrive at the age of thirty-one— held, that this contract was executory and could only be enforced by the widow or her representatives and not by the slaves, (8 *B. Monroe*, 633; *Ib.* 348; 7 *Dana*, 31; 11 *B. Monroe*, 243-4,) and did not amount to an emancipation of the slaves.

court seems to have decided that upon the authority of the case, *Dunlap* v. *Archer*, 7 *Dana*, 30, Clary and all of her children, whether born then or afterwards, were free. But this case differs from that of Archer, in the fact that, in that case, this court assumed that the jury might find that the writing relied on by Archer was either given to Archer, or was not a covenant with McDonald, but a mere declaration in writing of Archer's conditional title to freedom, (*page* 32,) and all the principles laid down in the case rest on this basis. Whereas, in the present case, the writing relied on, and the only written evidence of any contract relating to the emancipation of Clary and her children, is a bond directly payable to Mrs. Lucy Hawkins, and conditioned for their future emancipation as they should respectively attain the age of thirty-one years. And in *Dunlap* v. *Archer*, (*page* 31,) it is expressly said, if McDonald and not Archer was a party to the contract, as it could not be deemed an executed charter of emancipation, it would be insufficient to maintain this action, which can be sustained only on the ground that Archer is, in judgment of law, a free man. But here Mrs. Hawkins and not Clary was expressly and exclusively the party with whom Lee covenanted. The contract was clearly and expresssly executory; and in such a case it has been repeatedly decided by this court, that it is enforcible only by the parties to it, or their representatives, and that it confers no right of action upon the slave either at law or in equity. (*Gatliff's ad'm'r* v. *Rose, &c.* 8 *B. Mon.* 633; *Willis* v. *Bruce*, *Ib.* 348; *Dunlap* v. *Archer*, 7 *Dana*, 31; and *Henry, &c.* v. *Nunn's heirs*, 11 *B. Monroe*, 243-4.) The bond, therefore, being an executory contract between Mrs. Hawkins and Wm. Lee, did not of itself emancipate either Clary or any of her children, nor did it give to any of them the right to assert or obtain their freedom by suit either at law or in equity. And even if it should be assumed that Mrs. Hawkins executed a writing to Lee, selling and transferring Clary to him until she

should attain the age of thirty-one years, without more, such writing could not either alone or in connection with the bond of Lee, be regarded as an emancipation by Mrs. Hawkins; because, in truth, there would be no written act on her part, or signed by her, importing either present or future emancipation, and because, even if the bond executed by Lee could be regarded as a present act of future emancipation, he had no power to emancipate; for his interest under the sale was temporary only; and if Mrs. Hawkins could have transferred her power to him, (which we do not admit but deny,) such transfer could only be made by writing executed by her, and could neither be made by parol nor effectually implied from the written bond of Lee, nor from its acceptance by Mrs. Hawkins.

Under this view, it is not necessary to inquire whether the power given by the will authorized the emancipation of any slaves not in existence at the death of the testator, and whether, if there had been a valid exercise of the power, it could have operated upon any children born after the testator's death and before the mother's age of thirty-one years. There was no valid exercise of the power by Mrs. Hawkins, nor in fact any attempt by her to execute it in or by writing, in which form alone it could be so recognized as that a court of equity would aid in a defective execution of it. And as it was not effectually transferred, and as we think could not be, it is scarcely necessary to inquire into the validity or effect of the attempted emancipation by the heirs of Lee. We observe, however, with respect to that act, that if the power of emancipation existed in Lee, and did not cease on his death, it would seem to have devolved properly upon his personal representative, of whose concurrence in its exercise by the heirs there is no evidence, nor is any reason given why it was attempted to be exercised by them. And further, that even if the power was in the heirs, they do not appear to have executed any deed or writing of emancipation, but the order

E. O. HAWKINS
*vs.*
P. F. HAWKINS, &c.

3. If a power given to one by will to emancipate slaves can be transferred to another (of which, quere?) it would devolve upon the personal representative of the person to whom given, not the heir, and should be by a writing as recognized by statute. (See *Major v. Winn's adm'r., post.*)

of the county court merely states that the heirs of William Lee, deceased, without naming them, brought into open court the negro woman, &c., "and do hereby forever free said Clary from all servitude, and she is hereby declared to be a free woman, and entitled to all the privileges of a free woman of color."

Whether this form of proceeding, by persons entitled to emancipate, might be deemed effectual, or might be aided as a defective execution of a power, we need not decide. Lee had no power to emancipate, and his heirs derived none from him. The act was, therefore, wholly ineffectual as an act of emancipation. And as there had been no previous emancipation of Clary, or any of her children, and as the mere acquiescence of the heirs of Hawkins, during the life of his widow, in the condition which the slaves were allowed by her to assume, did not bar the heirs from their right upon her death, it follows that none of the complainants are entitled to freedom, and that each of the bills should have been dismissed.

Wherefore each of the five decrees now before us is reversed, and each cause is remanded with directions to dismiss the bill.

*Ewing & Bowling,* for plaintiff.