## Miller v. Commonwealth.

(Decided December 10, 1918.)

### Appeal from Powell Circuit Court.

1. Criminal Law—Submission to Jury.—If there is any evidence, although circumstantial, connecting the defendant with the crime charged against him, the case should go to the jury, and the verdict will not be disturbed unless flagrantly against the evidence.

2. Criminal Law—Argument of Counsel.—The mere statement by the attorney for the Commonwealth in his argument to the jury that certain evidence had not been contradicted is not so obviously an indirect reference to the fact that the defendant did not testify in his own behalf, even though such evidence could have been contradicted by the defendant alone, as to amount to a violation of section 223 of the Criminal Code, which prohibits any comment upon the failure of a defendant to testify.

3. Criminal Law—Personal Identity.—Personal identity is a matter of opinion or belief and a witness who shows himself competent, may give his opinion as to the identity of a person seen at a distance of two hundred or more yards.

A. F. BYRD for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The appellant, Wiley Miller, was indicted by the grand jury of Breathitt county, charged with having murdered John Spurlock in that county on the third day of January, 1917. Upon his motion for a change of venue, the cause was transferred to and tried in Powell county, resulting in his conviction, and his punishment being fixed at life imprisonment. Of this verdict and judgment he complains, first, because there was no evidence of his guilt, and his motion for a peremptory instruction should have been sustained; second, because the evidence was insufficient to support the verdict, and his motion for a new trial should have been granted; third, because of improper argument by counsel for the Commonwealth; and, fourth, because of the admission and rejection of evidence. As the first two grounds challenge the sufficiency of the evidence against the defendant and necessitate a rather lengthy statement of it, they will be considered together.

1. The defendant and the deceased resided upon opposite sides of the south fork of Quicksand creek, about a mile and a half above the town of Quicksand, in Breathitt county. The Commonwealth proved an unfriendly feeling and several quarrels between them; that about two months before the homicide defendant threatened the life of the deceased ''if he fooled with him,'' and that the deceased was a witness against the defendant on an indictment pending in the Breathitt circuit court; that both were in the town of Quicksand on the afternoon of January 3, 1917; that the deceased, between three and four o'clock, left town, driving a one-horse wagon on the county road leading to his home; that the defendant was on the bridge over which the county road passes as the deceased left town, and that he then started toward his home up the narrow-gauge railroad, which was in the same direction the deceased was traveling; that defendant was on foot and continued on the railroad track, on his own side of the creek, until he got near the home of Sarah Gayhart, where he left the railroad track and went in the direction of the creek across which was the county road leading to Spurlock's home.

Branch· Howard, who lived across the creek and nearly opposite the home of Mrs. Gayhart, testified that at about four o'clock in the afternoon the defendant came along the county road in front of his house, going in the direction of where the murder was committed, and asked

him if John Spurlock's wagon had gone up the road; that he told him it had not, and defendant went on up the road; that about ten minutes later Spurlock passed, and in a few minutes he heard nine or eleven shots fired, and in about five minutes thereafter he heard that Spurlock had been killed, and went to the place of the tragedy where he found Spurlock lying in the road with seven pistol wounds in his body; that upon the ground nearby he saw a number of empty shells from a 32-caliber automatic pistol.

Mrs. Sylvania Campbell testified that she lived about 200 yards from where John Spurlock lived; that her residence is on the same side of the road; that she owned the land between the road where Spurlock was killed and the Quicksand creek; that there is a considerable bottom of land between the place of the killing and the creek at the mouth of Rose's branch, up which the defendant lived; that she was down in this bottom shucking corn at the time of the shooting; that immediately thereafter she saw a man run from the place of the killing down into the bottom in the direction of the creek, but that she did not recognize him and did not remember how he was dressed. Shade Combs and George Daniels testified that they had seen the defendant some months before the murder of Spurlock with a 32 automatic pistol.

Loss Noble testified that upon the afternoon of and shortly before the killing he saw defendant have in his hands the loaded magazine of a 32-caliber automatic pistol.

Clay Watkins testified that two pistol balls taken from the body of the deceased were 32-caliber, but that he did not know whether they were from an automatic pistol or not.

Will Barnett testified that the two pistol balls taken from the body of the deceased were, in his judgment, of 32-caliber, and steel jacketed, leaden balls.

Green Watkins, a constable, and Shade Combs, a deputy sheriff, testified that they went to the home of defendant at 7:30 and again at midnight on the night of the murder, and again about noon on the next day, and did not find him there upon any of these occasions, but that they found him there and arrested him the next day, which was the second day after the murder; that the morning after the murder they saw tracks leading from the place of the murder across the bottom to the mouth of

Rose's branch; that the tracks were 6 or 7 feet apart and made by a man's shoe, No. 6, 6½ or 7, in the bottom of which there were rows of tacks or sprigs.

Sam Cockrill, another deputy sheriff, said the shoes that defendant wore on the examining trial were of the size and character that made the tracks, and that "they corresponded, looked like pretty near as anything could, I reckon;" that a great many people in that locality wore shoes with sprigs or tacks in the soles, but that there was a peculiarity in the way the sprigs were placed in the bottom of the shoe that made the tracks.

Tom McIntosh testified that at about 11 o'clock on the night of the killing, defendant and Delbert Prater came to his house, and that one of them was carrying a gun.

Lum Johnson testified that at about half-past two the next morning a man he did not know, and who said his name was Combs, and whom he identified as the defendant, came to his house and got him to get up and go to his store near by, and sell him Vienna sausage, crackers, candy and pickles.

Mrs. Sarah Spurlock, widow of the murdered man, testified that at the time of the killing she was in a field below her house and near the road, looking after some turkeys; that the killing occurred where the road crosses a ravine which was obstructed from her view, but immediately after she heard the shots fired, a man climbed over the fence and ran down through the bottom toward the mouth of Rose's branch; that the man wore a cap, a blue shirt, and overalls; and that in her judgment it was the defendant; that she had known the defendant for about 16 years; that she was within 100 or 150 yards of the man she saw running across the bottom toward the mouth of Rose's branch. Several witnesses corroborated the testimony of Mrs. Spurlock as to how the defendant was dressed upon the afternoon of the killing. Other witnesses testified for the Commonwealth to have seen the defendant either before or after the murder, and close enough to the place to have been there at the time the shots were fired.

While this evidence is all circumstantial, it is certainly such evidence as tends to show the guilt of the defendant and required a submission of the case to the jury. Not only so, but this evidence was amply sufficient to sus-

tain the verdict of the jury, and there is no merit in the contention of counsel for appellant that because Gertrude Combs and Bertha Clemons testified for the defendant that at the time of the shooting Mrs. Spurlock was with them in her home, and not where she said she was, nor where she could have seen a man running from the place of the killing across the bottom to the mouth of Rose's creek; and because of other proof tending to contradict or weaken the testimony given by Mrs. Spurlock, that her evidence was so completely destroyed as to render it of no probative value whatever, because it was the especial province of the jury to weigh her testimony with the evidence introduced in contradiction thereof and to determine what weight should be given it. It is the settled and uniform rule of this court, that if there is any evidence, although circumstantial, connecting the defendant with the crime, the case should go to the jury. Daniels v. Commonwealth, 181 Ky. 392; Hayes v. Commonwealth, 171 Ky. 291; Commonwealth v. Gritten, 180 Ky. 446; Little v. Commonwealth, 177 Ky. 24; Barnes v. Commonwealth, 179 Ky. 725; Belcher v. Commonwealth, 181 Ky. 516; Owens v. Commonwealth, 181 Ky. 257.

And the verdict of a jury will not be disturbed upon the ground it is not sustained by the evidence unless it is flagrantly against the evidence. See section 281 of the code as amended. Wilson v. Commonwealth, 140 Ky. 1; Chaney v. Commonwealth, 149 Ky. 467; Hall v. Commonwealth, 152 Ky. 812; Minniard v. Commonwealth, 158 Ky. 216.

The only evidence introduced in behalf of the defendant other than that for the purpose of discrediting the evidence of Mrs. Spurlock was to prove that the defendant was not at the place of the murder when it was committed, and we can not say that upon all of the evidence the verdict was flagrantly against the evidence; in fact we do not see how it could have been other than it was, because all of the evidence shows defendant was in the immediate vicinity of the place both shortly before and directly after the murder.

2. The defendant did not testify in his own behalf, and it is argued that counsel for the Commonwealth was guilty of misconduct in his argument to the jury in stating that no one had contradicted the testimony of Mrs. Spurlock that she had seen the defendant fleeing from

the place of the murder; or the testimony of Lum John-
son that the defendant came to his store at 2:30 o'clock
in the morning after the murder, and gave his name as
Combs; that this was a reference to the fact that the de-
fendant, who alone could have contradicted these state-
ments, had not testified in his own behalf, and was in
violation of section 223 of the Criminal Code, which pro-
vides that if the defendant does not testify in his own
behalf, as he by that section is given the right to do, "his
failure to do so shall not be commented upon or be al-
lowed to create any presumption against him." In sup-
port of this contention appellant presents numerous cases
from other jurisdictions which hold in effect that to call
the jury's attention to the fact that certain testimony
has not been contradicted is an indirect reference to the
defendant's failure to testify, if he alone could have con-
tradicted it, and such a violation of both the letter and
spirit of the statutory inhibition against comment upon
the failure of the defendant to testify in his own behalf
as to necessitate a reversal; and it seems that this is the
rule quite generally, but in this state, while we hold
that a direct reference is such prejudicial and improper
conduct as can not be cured by the court's admonition
to disregard it, where the reference is indirect, it is our
duty, under the provisions of our code, which limit our
right of reversal to such errors as are prejudicial to the
defendant's substantial rights, to consider the facts and
circumstances of each case, and determine whether or
not an indirect reference is error, and whether or not,
if error, it could be cured by the court's admonition to the
jury to disregard it; and upon such a consideration the
determining factor is, of course, whether the indirect
reference was such as was reasonably liable to have di-
rected the jury's attention to the failure of the defendant
to testify, or was so remote as not reasonably liable to
have had such effect; and in so doing, we have consist-
ently held that a mere reference to the fact that certain
evidence introduced had not been contradicted, was not
improper. Tudor v. Commonwealth, 43 S. W. 187; John-
son v. Commonwealth, 29 Ky. Law R. 675; Begley v.
Commonwealth, 32 Ky. Law R. 890; Farley v. Common-
wealth, 165 Ky. 600; Wallace v. Commonwealth, 167 Ky.
277. And upon a careful reconsideration of all the au-
thorities we are convinced our rule is sound, and that
the mere fact that possibly the jury, by a process of reas-

oning, might have eventually arrived at the remote fact that the defendant did not testify, but not unless they comprehended from the evidence another fact, not commented upon, that no one but the defendant could have denied the uncontradicted evidence, is not sufficient reason for depriving the attorney for the Commonwealth of the right to state to the jury that certain facts stood uncontradicted in the evidence. The other rule seems to us highly technical, lacking in substance and an unreasonable abridgment of the right of counsel to comment upon evidence actually introduced, simply because possibly by such a reference the reasoning faculties of the jurymen might be aroused, which certainly was not the purpose of the code provision under consideration. Of course, if counsel should call attention to the fact that certain evidence had not been contradicted, and then call attention to the further fact that only the defendant could have made such denial, this would be a direct reference to defendant's failure to testify, but to simply state that certain evidence had not been contradicted, whether it might have been contradicted by the defendant alone or others, we feel certain is not a violation of either the letter or the spirit of the code provision.

Dealing with a similar comment this court, in the case of Tudor v. Commonwealth, *supra,* pertinently said: "It may be that it was intended as an allusion to the fact that appellant did not testify, but we can not see that it was sufficiently obvious to direct the jury's attention to the fact, if it had not been for the objections of the defendant." So in the case at bar, we do not think that the statement made by the attorney for the Commonwealth was objectionable because it was not obviously even an indirect reference to the fact that defendant had not testified, and possibly became connected with that fact in the minds of the jurymen only because of the objection thereto by the defendant of which he can not complain.

3. The following rulings of the court upon the admission of evidence are complained of: After Mrs. Spurlock had testified that she had seen a man run from the place of the killing immediately after she heard the shots, she was asked, "Do you know who that man was?" and answered, over the objection and exception of the defendant, "To the best of my opinion it was Wiley Miller." This evidence is clearly competent, especially in view of the fact that Mrs. Spurlock stated that she had known

the defendant for 15 or 16 years. It is, of course, true that as she was probably 250 yards from the man, she may have been mistaken, and that she realized this possibility her answer shows. But as said in 17 Cyc. 132: "Identity, as of . . . the accused and other persons or of things is an inference which any one may state who shows himself possessed of adequate knowledge." Upon this question, Chief Justice Robertson, writing the opinion of this court, said in Gentry v. Mc-Minnis, 3 Dana, 382: "Personal identity, like handwriting, is matter of opinion or belief, founded on facts which may be, and frequently are, inexplicable and incommunicable to a stranger; and therefore, as to such a fact, opinion is competent evidence." See also 8 R. C. L. 183, and People v. Jennings, 252 Ill. 534, 96 N. E. 1077, 43 L. R. A. (N. S.) 1206.

George Daniels testified over the objection of the defendant that about two months before John Spurlock was killed he saw the defendant have a 32 automatic pistol, in the town of Quicksand, to which the defendant excepted. This evidence is alleged to be too remote, therefore, incompetent. We do not think, however, that this was too remote even had it stood alone, but it was certainly competent here because the Commonwealth also proved that upon the day of the murder the defendant had in his possession the loaded magazine of just such a weapon. The defendant also insists that it was error to refuse to permit him to prove by Sam Cockrill that on the trial of the case at Jackson he saw a number of witnesses who testified in the case, wearing shoes that had tacks in the bottom of them; but even if this were error, it was not prejudicial because it was proven by this and other witnesses that a great many people in that locality wore shoes with tacks in the bottom of them, and besides there was no avowal that the witness would have so testified. The defendant proved by Bertha Clemons that on the evening of the killing, Mrs. Spurlock asked her, in talking about the killing of her husband, if she thought that James Brewer would do anything like that, and the court, upon motion of the plaintiff, excluded this evidence from the consideration of the jury. It is urged that this evidence was to show that the witness, Mrs. Spurlock, had perjured herself when she said that she saw a man whom she took to be Wiley Miller running away from the place of the killing; but this evidence certainly

could not have had any such effect or tendency because there was nothing inconsistent in Mrs. Spurlock asking, even though she had seen the defendant running away from the place of the murder, if the witness thought that James Brewer, who had passed up the road but a short time before, would do anything like that, and we do not see how this question upon the part of Mrs. Spurlock was material or how the exclusion of this evidence could have prejudiced defendant's substantial rights.

The defendant introduced Carlie Clemons, who stated that on the afternoon Mr. Spurlock was killed, he was at the home of Mrs. Spurlock and talked with her about the killing; and he was then asked if, during that conversation, he heard Mrs. Spurlock accuse the defendant of having done the killing; and it was avowed that the witness would have answered that he had not heard her make any such statements. It had already been proven by a number of witnesses, and Mrs. Spurlock herself had admitted that she had not accused the defendant of having committed the murder until she testified to the same at the examining trial, so that the exclusion of this evidence, if error, was not prejudicial.

Failing to find any prejudicial error in the trial of the defendant, the judgment is affirmed.