## Collins v. Commonwealth.

(Decided April 19, 1932.)

A. J. MAY and EDWARD L. ALLEN for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

Early in the morning of November 9, 1930, Mary Burchett received a gunshot wound from which she died instantly. The tragedy was the culmination of a birthday party given in her honor at the home of her first cousin, Bess Harman. Ashley Collins, Burt Wells, Oma Ford, and Bess Harman were charged with the murder. On separate trial, Ashley Collins was convicted of voluntary manslaughter, and his punishment fixed at imprisonment for twenty-one years. He has appealed.

While a number of grounds for reversal of the lower court's judgment are argued, the conclusions reached render it unnecessary to give attention to but one of these grounds.

At the time the tragedy occurred, the party had about broken up and a number of guests had departed,

leaving only deceased and the defendants in the indictment at the Harman home. It is shown by the evidence that appellant arrived at the party about 10 o'clock. When he entered the house he had a .45 caliber automatic pistol in his hand. He testified that he had the pistol in his automobile, and, upon arriving, carried it into the house. Abe Laviers, one of the guests, took the pistol from appellant and kept it until about one o'clock when he was preparing to leave for his home. It does not clearly appear why the pistol was taken from appellant, and there is no evidence that he made any protest against surrendering it. Immediately before the fatal shot was fired, appellant had the pistol in his hand and took the magazine out of it. Deceased asked to see the pistol, and either reached and took it from appellant or he voluntarily gave it to her. She later returned the pistol to him, or he in some way regained possession of it. She again asked for the pistol to see if there was another cartridge in it, and reached for it. She was looking in the barrel when from some cause the pistol discharged, the ball entering just above the left eye and coming out at the back of the head. Appellant immediately regained possession of his pistol, and hurriedly left the scene.

There is a conflict in the evidence as to whether appellant had hold of the pistol when it fired. He testified that he did not. The strongest evidence tending to connect appellant with the shooting is that of Darwin Wells. His evidence on that point is as follows:

"He had the pistol in his hand and he took the magazine out and she was sitting on the bed and she said, 'Let me see if there is another cartridge in it,' and she took hold of it and she got it down this way (indicating). He had hold of the back end of the gun and it went off."

Further on in the evidence of this witness the following questions and answers are found:

"Q. 31. How come Mary to have the gun? A. She took it from him.
"Q. 32. How did he have it? A. He had the magazine and took some shells out.
"Q. 33. Did you notice them talking about the gun there? A. No, sir.
"Q. 34. Hear her say anything about the gun there? A. No, sir.

"Q. 35. You were dancing at the time? A. No, sir.

"Q. 36. Was she sitting down or standing up? A. Sitting on the bed.

"Q. 37. That is when she raised up and took the gun out of his hand? A. Yes, sir .

"Q. 38. What was he doing with it at that time? A. In his hand.

"Q. 39. When she got it what did she do? A. She ejected one shell from it.

"Q. 40. How did she do it? A. Run her hand across the gun.

"Q. 41. Did the shell fall out of the gun? A. Believe there was one come out then.

"Q. 42. When she took that shell out of the gun, did he take it back or did she reach it back? A. He took it back.

"Q. 43. Did she give it up willingly? A. Yes, sir.

"Q. 44. Then what did she say to him? A. Don't remember.

"Q. 45. What did he do then? A. He was standing there, she said, 'Let me see if there is another cartridge.'

"Q. 46. She pulled the gun and it went off? A. Yes, sir, and I saw him stick something back in his pocket.

"Q. 47. The gun didn't fall on the floor? A. No, sir.

"Q. 48. The defendant ran? A. Yes, sir.

"Q. 49. Did he run fast or slow? A. He wasn't running fast.

"Q. 50. Did he say anything at all after the girl was shot? A. No, sir."

There is evidence that prior to his marriage in May, 1930, Abe Laviers and Mary Burchett had been sweethearts, and that her devotion to him continued after his marriage. A number of witnesses testified that his marriage seemed to have cast her into a state of gloom and despondency, and on a number of occasions she had expressed an intention of ending her life. Three or four witnesses testified to statements expressing her indication of carrying out that intention the night of the party. There is some evidence for the commonwealth to the effect that appellant was paying court to Mary Burchett

and had taken exception to her attentions to Abe Laviers, but appellant testified and the evidence of other indicates that this was nothing more than a passing attention, and that there was no serious love affair betwen these parties.

Darwin Wells admitted on the witness stand that he testified before the coroner and grand jury that Mary Burchett shot herself accidentally, but tried to excuse the variance of his evidence on the ground that he was afraid to testify otherwise at the time.

Immediately following the shooting, appellant sought seclusion in Floyd county some distance from his home. He remained in hiding only a day or so, and returned home at the request of his father. He testified that he left home in fear that when the brothers of deceased learned that she had been shot with his pistol they would become angry and might attempt to do him harm.

It is the prevailing rule in this state that when there is any evidence of a probative character, whether direct or circumstantial, tending to establish guilt, it should be left to the jury to determine its weight as bearing on the guilt or innocence of the accused. Miller v. Commonwealth, 182 Ky. 438, 206 S. W. 630; Utterback v. Commonwealth, 190 Ky. 138, 226 S. W. 1065; Nelson v. Commonwealth, 232 Ky. 568, 24 S. W. (2d) 276. But where the evidence merely tends to create a suspicion of guilt, and the jury must necessarily go out into a field of pure speculation without any incriminating evidence upon which to base a verdict, the trial court should direct a verdict of acquittal. Pardue v. Commonwealth, 227 Ky. 207, 12 S. W. (2d) 288; Tarkaney v. Commonwealth, 240 Ky. 790, 43 S. W. (2d) 34, and cases cited.

A careful consideration of the evidence in this case and all legitimate inferences deducible therefrom fail to reveal anything to create more than mere suspicion of guilt. And in the absence of anything of substance upon which to base a reasonable conclusion that appellant intentionally, or by wanton, reckless, or careless use of the pistol, fired the shot which caused the death of Miss Burchett, the court should have directed a verdict of acquittal.

With commendable candor the brief filed on behalf of the Attorney General admits the weakness of the evidence for the commonwealth.

Judgment reversed for new trial, and for proceedings consistent with this opinion.