

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

May 24, 1966

This Opinion
Affirms Opinion
# C-301
V-971

Honorable C. F. McElhinney
Senior Vice President & Treasurer
University of Houston
Cullen Boulevard
Houston, Texas 77004

Opinion No. C-690

Re: Whether the University
of Houston is required
to take out building
permits covering either
new construction of
buildings or remodeling
and repairs to existing
buildings and related
questions.

Dear Mr. McElhinney:

Your recent letter to this office informs us that
the University of Houston now owns, or is in the process of
acquiring, property located within the cities of Houston,
LaMarque and Clear Lake. In connection with such property,
the University of Houston has certain building projects under
actual construction or in the active planning stage. These
projects include both new construction and remodeling of
existing buildings.

You also state in your letter that these municipalities
are insisting that their ordinances and codes relating to
building permits and construction apply to the projects in
question. In view of these circumstances, you have requested
the opinion of this office as to whether:

"(1) The University of Houston is required
to take out building permits covering either new
construction, or remodeling and repairs.

"(2) The building code of the respective
municipalities is applicable to construction and
to the installation of electrical, plumbing,
heating and air conditioning facilities.

"(3) Final inspection and approval by a
municipal inspector is required."

Although you ask three questions, the single proposition
presented for our consideration is whether the building codes
provided by the ordinances of a home rule city apply to construction

-3314-

repair and remodeling projects undertaken by the University of Houston on property owned by that institution?

Article 1175 of Vernon's Civil Statutes grants to home rule cities "full power of local self-government." Among those powers specifically enumerated in Article 1175 are the following:

"25. To provide for the establishment and designation of fire limits and to prescribe the kind and character of buildings or structures or improvements to be erected therein, and to provide for the erection of fire proof buildings within certain limits, and to provide for the condemnation of dangerous structures or buildings or dilapidated buildings or buildings calculated to increase the fire hazard, and the manner of their removal or destruction.

"26. To divide the city in zones or districts, and to regulate the location, size, height, bulk and use of buildings within such zones or districts, and to establish building lines within such zones or districts or otherwise, and make different regulations for different districts and thereafter alter the same. . . ."

The validity of the ordinances which the municipalities seek to enforce is not questioned. We assume, for purposes of this opinion, that such ordinances were duly promulgated and adopted in accordance with applicable statutory provisions and in furtherance of the powers granted to home rule cities by the legislature. Ordinances of this nature constitute an exercise of the police power. Kirechke v. City of Houston, 330 S.W.2d 629 (Tex.Civ.App. 1959, error ref. n.r.e.).

It is a well established rule that municipal ordinances regulating the construction, repair and equipment of buildings do not apply to projects undertaken by the state or its agents on property owned by the state. Board of Regents v. City of Tempe, 88 Ariz. 299, 356 P.2d 399 (1960); Kentucky Institute For Education of Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402 (1906); Town of Bloomfield v. New Jersey Highway Authority, 18 N.J. 237, 113 A.2d 658 (1955); County of Westchester v. Village of Mamaroneck, 22 App.Div.2d 143, 255 N.Y.S.2d 290 (1964) affirmed 16 N.Y.2d 940, 212 N.E.2d 442 (1964); Davidson County v. Harmon, 200 Tenn. 575, 292 S.W.2d 777 (1956); City of Charleston v. Southeastern Const. Co., 134 W.Va. 666, 64

S.E 2d 676 (1950); accord: Ex parte Means, 14 Cal.2d 254, 93 P.2d 105 (1939); Newton v. City of Atlanta, 189 Ga. 441, 6 S.E.2d 61 (1939); City of Frankfort v. Commonwealth, 243 Ky. 633, 49 S.W 2d 548 (1932).

The rationale of these decisions is the ultimate right of the state to act with regard to property which the state owns and controls without interference from, or regulation by, a subordinate entity which was created by the state and derives all of its power and authority from the state.

> "* * * /T/he state will not be presumed
> to have waived its right to regulate its own
> property, by ceding to the city the right
> generally to pass ordinances of a police nature
> regulating property within its bounds. * * *
> The principle is that the state, when creating
> municipal governments, does not cede to them
> any control of the state's property situated
> within them, nor over any property which the
> state has authorized another body or power
> to control. The municipal government is but
> an agent of the state--not an independent body.
> It governs in the limited manner and territory
> that is expressly or by necessary implication
> granted to it by the state. It is competent
> for the state to retain to itself some part
> of the government even within the municipality,
> which it will exercise directly, or through
> the medium of other selected and more suitable
> instrumentalities. How can the city have ever
> a superior authority to the state over the
> latter's own property, or in its control and
> management? From the nature of things it cannot
> have." Kentucky Institute For Education of Blind
> v. City of Louisville, 123 Ky. 767, 97 S.W. 402,
> 404 (1906).

While this rule was expressly recognized by the Supreme Court of Texas in Port Arthur Ind. Sch. Dist. v. City of Groves, 376 S.W.2d 330 (Tex. 1964), it was held that the buildings erected by an independent school district are subject to the regulatory ordinances of the municipality in which they are located. This result was the consequence of the court's conclusions at page 333 of the opinion:

> ". . ./I/ndependent school districts . . .
> are independent political entities and we will
> not classify their property as state property.
> . . . The Legislature . . . made no provision

whatsoever that they should regulate, supervise or control in any manner the building of school buildings and provided for no safety regulations for the protection of the occupants or the property of others in the vicinity of the school buildings." (Emphasis added)

Compare School Dist. of Philadelphia v. City of Philadelphia, 417 Pa. 277, 207 A.2d 864 (1965).

In view of the decision in the City of Groves case it becomes important to determine whether or not property owned and controlled by the University of Houston is classified as state property.

On the 1st day of September, 1963, the University of Houston, an existing privately endowed institution, became a state institution of higher learning. S.B. No. 2, Acts 57th Leg., 1961, ch. 370, p. 811. It receives funds appropriated from the Treasury of the State of Texas. H.B. No. 86, Acts 58th Leg., 1963, ch. 525, p. 1607; H.B. No. 12, Acts 59th Leg., R.S. 1965, ch. 720, p. 1887. And is apportioned parts of a special tax levied for the benefit of certain state institutions of higher learning. Tex. Const., Art. VII, Sec. 17.

Section 15 of Article 2615g of Vernon's Civil Statutes reads as follows:

"From and after the operative date of this Act, the University of Houston herein created shall be subject to the obligations and entitled to the benefits of all General Laws of Texas applicable to all other state institutions of higher learning, except where such General Laws are in conflict with this Act, and in such instances of conflict this Act shall prevail only to the extent of such conflict."

The organization and control of the University of Houston is vested in a nine member board of regents appointed by the Governor of Texas with the advice and consent of the Senate. Each member of the board must take the oath of office prescribed by the Constitution of Texas. The board is directed to "enact such by-laws, rules and regulations as may be necessary for the successful management and government of the University." Art. 2615g, Sec. 2, V.C.S.

All of the property owned by, or held for, the University of Houston, prior to its becoming a state institution of higher learning, was donated to the Board of Regents of the University of Houston created by Article 2615g of Vernon's Civil Statutes. Section 8 of Article 2615g specifically provides that "the University of Houston created by this Act shall hold title to all properties so conveyed and shall commence operations of such properties for the use and benefit of the State of Texas." (Emphasis added)

Section 10a of Article 2615g vests in the board of regents the power of eminent domain "to acquire for the use of the University of Houston such lands as may be necessary and proper for carrying out its purposes as a State-owned and operated institution of higher education." (Emphasis added)

The board of regents is authorized to construct, acquire, improve, enlarge, repair and equip all types of buildings, gymnasia, and stadia as may be needed for the good of the University of Houston, when the total cost, type and plans and specifications have been approved by the board. Art. 2615g, Sec. 11, V.C.S.

In our opinion the constitutional and statutory provisions to which we have referred clearly dispell all doubt that the property owned and controlled by the Board of Regents of the University of Houston is state property. The board is an agency of the state, subject to legislative control, and all property owned by it is held solely as the representative of the state. See Board of Regents v. City of Tempe, 88 Ariz. 299, 356 P.2d 399 (1960); Kentucky Institute For Education of Blind v. City of Louisville, 123 Ky. 767, 97 S.W. 402 (1906); City of Milwaukee v. McGregor, 140 Wis. 35, 121 N.W. 642 (1909).

We are likewise convinced that the board of regents has been vested with discretionary power with regard to cost, type, location, plans and specifications for the construction and repair of buildings and structures owned or to be owned by the University of Houston. Cf. Splawn v. Woodard, 287 S.W. 677 (Tex.Civ.App. 1926, no history). The discretion of the board of regents in this regard is subject only to such conditions and restrictions as are imposed by our constitution and the enactments of the legislature. In this connection, we specifically point out that Section 15(7) of Article 2919e-2 of Vernon's Civil Statutes requires that certain building projects proposed by the various institutions of higher learning be approved by the Coordinating Board, Texas College and University System. The extent to which this latter statutory provision affects the building projects proposed by the various

institutions of higher learning has been construed by this office in Attorney General's Opinion C-686 (1966).

Having determined that the property owned and controlled by the University of Houston is state-owned property and that the planning, location, construction, repair and equipping of building projects is, within the limits noted above, a matter vested in the board of regents of such institution by the legislature, we are not compelled to follow the decision in Port Arthur Ind. Sch. Dist. v. City of Groves, supra.

A coordinated, efficient and effective system of higher education is a matter of state-wide concern. This concern was clearly expressed by the legislature in Section 1 of Article 2919e-2 of Vernon's Civil Statutes which reads as follows:

> "This Act shall be known as the Higher Education Coordinating Act of 1965. Its purpose is to establish in the field of public higher education in the State of Texas an agency to provide leadership and coordination for the Texas higher education system, institutions and governing boards, to the end that the State of Texas may achieve excellence for college education of its youth through the efficient and effective utilization and concentration of all available resources and the elimination of costly duplication . in program offerings, faculties and physical plants."

Municipalities have been given no responsibilities in the field of higher education and their ordinances regulating location, construction and design of buildings were enacted without specific consideration for the needs of state institutions of higher learning. Such ordinances are primarily concerned with the location of residences, parks, factories, warehouses, businesses, and the construction of same with safety and benefit to the community and its citizenry. This is a matter of local concern and the plans and efforts of the state in the pursuit of excellence in the field of higher learning are not to be subjugated to the regulatory powers of municipalities.

The case of Board of Regents v. City of Tempe, 88 Ariz. 299, 356 P.2d 399 (1960), is, to our minds, squarely in point upon the question before us. We consider it to be a well reasoned opinion and in following it we hold that the municipal

ordinances in question are not applicable to the building projects inquired about.

In Port Arthur Ind. Sch. Dist. v. City of Groves, supra, the court expressed the fear that buildings erected by independent school districts would constitute a threat to the health and safety of the community if they were not regulated by municipal building ordinances. We do not view the prospect of the development and expansion of the physical facilities of the various state institutions of higher learning, unrestrained by the regulatory ordinances of the various municipalities within which such institutions may be located, as a threat to the safety and health of the community. The state is the ultimate authority responsible for the protection of the health, safety and welfare of its citizens and we will not presume that the state or the designated governing boards of its institutions of higher learning will, in the pursuit of educational excellence, so plan and expand the facilities of these institutions as to be unmindful of the health and safety of the community involved. The following statement of the court in the City of Tempe case, supra, is particularly appropriate to this aspect of the question:

> "There is nothing to suggest that the Board will supervise the University's construction program with less concern for the public welfare than would the City. Indeed, we may well assume that this Court's determination of the scope of the Board's duties will be followed by an appreciation of the responsibilities generated thereby. It is thus unnecessary for us to consider or enumerate the judicial and other remedies available to insure that the Board, or any other state or municipal agency, performs its duties in a manner consistent with the health, safety and general welfare of the people of this State.

> "We hold that the City of Tempe may not apply its building codes and regulations to Arizona State University." 356 P.2d 407.

Therefore, you are hereby advised that the municipal ordinances regulating location, construction, design, equipping and inspection of buildings and structures within such municipalities do not apply to projects undertaken by the University of Houston on land owned by such institution. Our conclusion upon this question is also supported by Attorney General's Opinions V-977 (1949) and C-301 (1964), both of which are hereby affirmed.

## S U M M A R Y

Municipal ordinances regulating the location, size, design, height, construction, equipping, and inspection of new buildings or the remodeling and repair of existing buildings, do not apply to projects undertaken by the state on property owned by the state. The University of Houston is a state institution of higher learning, created and controlled by the state. Its property is state property, therefore the erection, remodeling, or repair of buildings by the University of Houston is not regulated by the ordinances of the municipalities within which they are located.

Very truly yours,

WAGGONER CARR
Attorney General

By: W. O. Shultz
W. O. Shultz
Assistant

WOS:ra:ml

APPROVED:
OPINION COMMITTEE

W. V. Geppert, Chairman
John Reeves
Pat Bailey
James Strock
Linward Shivers

APPROVED FOR THE ATTORNEY GENERAL
BY: T. B. Wright